1  Steven A. Marenberg (101033) (smarenberg@irell.com)
   Elliot Brown (150802) (ebrown@irell.com)
2  Benjamin Glatstein (242034) (bglatstein@irell.com)
   IRELL & MANELLA LLP
3  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
4  Telephone:   (310) 277-1010
   Facsimile:    (310) 203-7199
5
   Attorneys for Plaintiffs
6  UMG Recordings, Inc.;
   Universal Music Corp.;
7  Songs of Universal, Inc.;
   Universal-Polygram International Publishing, Inc.;
8  and Rondor Music International, Inc.

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11                  SAN DIEGO DIVISION

12  VEOH NETWORKS, INC., a California          )  Case No. 07 CV 1568 TJW (BLM)
    corporation,                               )
13                                             )  **DEFENDANTS' NOTICE OF MOTION**
                                               )  **AND MOTION TO DISMISS OR, IN THE**
14            Plaintiff,                        )  **ALTERNATIVE, TO TRANSFER**
                                               )
15       vs.                                    )  **FILED CONCURRENTLY HEREWITH:**
                                               )  **DECLARATION OF BENJAMIN**
16                                             )  **GLATSTEIN IN SUPPORT OF MOTION**
                                               )
17  UMG RECORDINGS, INC., a Delaware           )  Date: October 9, 2007
    Corporation; UNIVERSAL MUSIC CORP., a      )  Time: 10:00 a.m.
18  New York corporation; SONGS OF             )  Judge: Hon. Thomas J. Whelan
    UNIVERSAL, INC., a California corporation;  )  Courtroom: 7
19  UNIVERSAL-POLYGRAM                         )
    INTERNATIONAL PUBLISHING, INC., a          )  **No Oral Argument Pursuant to Civil Local**
20  Delaware corporation; RONDOR MUSIC         )  **Rule 7.1(d).**
    INTERNATIONAL, INC., a California          )
21  corporation; and DOES 1-10 INCLUSIVE,      )
                                               )
22            Defendants.                       )
                                               )
23
24
25
26
27
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

Dockets.Justia.com

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE that on October 9, 2007, at 10:00 a.m., or as soon thereafter as

3    this matter can be heard before the Honorable Thomas J. Whelan of the United States District

4    Court for the Southern District of California, at 940 Front Street San Diego, CA 92101, Defendants

5    UMG Recordings, Inc., Universal Music Corp., Songs of Universal, Inc., Universal-Polygram

6    International Publishing, Inc., and Rondor Music International, Inc., (collectively, "UMG") will

7    move and hereby does move pursuant to Rule 12(b)(1) to dismiss this declaratory judgment action

8    or, in the alternative, to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the Central District

9    of California where related litigation has been ongoing for nearly a year.

10        This motion is based on the attached Memorandum of Points and Authorities in Support

11    Thereof, the Declaration Benjamin Glatstein, all files and pleadings in this action and any other

12    matters that may properly come before the court at or before the time of hearing on this matter.

13    Dated:  September 4, 2007                     Respectfully Submitted,

14                                                  IRELL & MANELLA LLP

15

16

17                                         By: _____

18                                                  Steven A. Marenberg
                                                    Elliot Brown
19                                                  Benjamin Glatstein

20                                                  Attorneys for Declaratory Defendants
                                                    UMG RECORDINGS, INC.; UNIVERSAL
21                                                  MUSIC CORP.; SONGS OF UNIVERSAL,
                                                    INC.; UNIVERSAL-POLYGRAM
22                                                  INTERNATIONAL PUBLISHING, INC.;
                                                    RONDOR MUSIC INTERNATIONAL, INC.
23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

1748112

- 2 -

1

TABLE OF CONTENTS

2

Page

3  I.    PRELIMINARY STATEMENT ......................................................................... 1

4  II.   FACTUAL BACKGROUND .............................................................................. 2

5        A.   UMG's Infringement Battles With "File-Sharing" Mass Infringers. ........................ 2

6        B.   The Emergence of "Video Sharing" Sites and UMG's Three Pending
7             Actions in the Central District of California. ........................................................ 3

        C.   The Veoh "Video Sharing" Service. ..................................................................... 5
8
        D.   Veoh's Tactical Suit And Litigation In The Press. .................................................. 6
9
        E.   UMG's Suit Against Veoh. .................................................................................. 9
10
11 III.  VEOH'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF
        SUBJECT MATTER JURISDICTION ............................................................... 9

12       A.   Veoh Fails To Identify A "Precisely Framed" or "Definite And
13            Concrete" Dispute. .......................................................................................... 10

        B.   Veoh Fails To Identify Any Registered Copyright In Dispute. ............................... 11
14
        C.   Veoh Seeks An Impermissible Advisory Opinion. ................................................ 11
15
16 IV.   VEOH'S COMPLAINT WAS FILED FOR TACTICAL PURPOSES, IT
        SHOULD BE DISMISSED AS AN ABUSE OF THE DECLARATORY
17       JUDGMENT ACT .......................................................................................... 13

18 V.    IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO
        THE CENTRAL DISTRICT .............................................................................. 16

19       A.   Veoh Could Have Brought, And Should Have Brought, Its Action in
20            the Central District. ........................................................................................ 17

21       B.   The Interest of Justice Favors Transfer to Facilitate Coordination
              with UMG's Pending Actions Against Other "Video-Sharing"
22            Services. ...................................................................................................... 18

        C.   Convenience of the Witnesses and Parties Favor Transfer. ................................... 21
23
24 VI.   CONCLUSION ............................................................................................... 25

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

- i -

1

## TABLE OF AUTHORITIES

2

Page(s)

3    **Cases**

4    *A&M Records, Inc. v. Napster, Inc.,*
           239 F.3d 1004 (2001) .................................................................................. 2

5

     *A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. Of California,*
6           503 F.2d 384 (1974) ............................................................................ 18, 19

7    *Amazon.com v. Cendant Corp.,*
           404 F. Supp. 2d 1256 (2005) ........................................................ 17, 18, 21

8

     *Armerada Petroleum Corp. v. Marshall,*
9           381 F.2d 661 (1967) .................................................................................. 12

10   *Bausch & Lomb Inc. v. Alcide Corp.,*
           684 F. Supp. 1155 (1987) ......................................................................... 14

11

     *Columbia Pictures Indus., Inc. v. Schneider,*
12          435 F. Supp. 742 (1977) ........................................................................... 14

13   *Continental Grain Co. v. The FBL-585,*
           364 U.S. 19 (1960) .............................................................................. 17, 18

14

     *Corbis Corp. v. Amazon.com, Inc.,*
15          351 F. Supp. 2d 1090 (2004) .............................................................. 11, 12

16   *Cunningham Bros., Inc. v. Bail,*
           407 F.2d 1165 (1969) ............................................................................... 12

17

     *Davox Corp. v. Digital Systems Intern., Inc.,*
18          846 F. Supp. 144 (1993) ........................................................................... 14

19   *Decker Coal Co. v. Commonwealth Edison Co.,*
           805 F.2d 834 (1986) ........................................................................... 16, 21

20

     *Durham Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A,*
21          537 F. Supp. 1241 (1982) ................................................................... 18, 19

22   *EMC Corp. v. Norand Corp.,*
           89 F.3d 807 (1996) .................................................................................... 14

23

     *Falconwood Financial Corp. v. Griffin,*
24          838 F. Supp. 836 (1993) ........................................................................... 19

25   *Flast v. Cohen,*
           392 U.S. 83 (1968) .................................................................................... 10

26

     *Gribin v. Hammer Galleries, a Div. of Hammer Holding, Inc.,*
27          793 F. Supp. 233 (1992) ..................................................................... 12, 13

28   *Gulf Oil Corp. v Gilbert,*
           330 U.S. 501 (1947) .................................................................................. 21

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

Page(s)

*Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d. 1542 (1989) .................................................................................. 15

*Hanes Corp. v. Millard*,
531 F.2d 585 (1976) .................................................................................... 12

*Heller Financial, Inc., v. Midwhey Powder Co.*,
883 F.2d 1286 (1989) .................................................................................. 18

*In re Aimster Copyright Litigation*,
334 F.3d 643 (7th Cir. 2003) ......................................................................... 2

*In re Horseshoe Entertainment*,
305 F.3d 354 (2002) .................................................................................... 21

*Io Group v. Veoh, Networks*,
N.D. Cal. Case No. C06-3926 HRL (Year) ................................................... 15

*Jolly v. Purdue Pharma L.P.*,
2005 WL 2439197 (2005) ......................................................................... 18, 19

*M.G.M.Studios  v. Grokster, Ltd.*,
545 U.S. 913 (2005) ...................................................................................... 2

*MedImmune, Inc. v. Genentech, Inc.*,
127 S. Ct. 764 (2007) .............................................................................. 10, 14

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
303 F. Supp. 2d 391 (2004) .......................................................................... 18

*Ravelo Monegro v. Rosa*,
211 F.3d 509 (2000). .................................................................................... 16

*RDF Media Ltd. v. Fox Broadcasting Co.*,
372 F. Supp. 2d 556 (2005) .......................................................................... 11

*Regents of the University of California v. Eli Lilly and Company*,
119 F.3d 1559 (1997) ............................................................................... 18, 21

*Republic of Bolivia v. Philip Morris Cos., Inc.*,
39 F. Supp. 2d 1008 (1999) ....................................................................... 18, 19

*Saleh v. Titan Corp.*,
361 F. Supp. 2d 1152 (2005) ................................................................ 20, 21, 24

*Schneider v. Sears*,
265 F. Supp. 257 (1967) ............................................................................... 19

*Scott v. Pasadena Unified School Dist.*,
306 F.3d 646 (2002) .................................................................................... 12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1748112

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

Page(s)

*Societe de Conditionnement v. Hunter Engineering Co.,*
    655 F.2d 938 , 943 (1981) ................................................................................ 15

*State Farm Fire and Cas. Co. v. Taylor,*
    118 F.R.D. 426 (1988) ................................................................................... 12

*UMG Recordings, Inc., et al. v. Bolt, Inc., et al.,*
    C.D. Cal. Case No. 06-06577 AHM (2006) ............................................... 3

*UMG Recordings, Inc., et al. v. Grouper Networks, Inc., et al.,*
    C.D. Cal. Case No. CV 06-06561 AHM (2006) ....................................... 3

*UMG Recordings, Inc., et al. v. MySpace, Inc., et al.,*
    C.D. Cal. Case No. CV 06-07361 AHM (AJWx) (2006) ........................ 4

*United States v. Arnold,*
    678 F. Supp. 1463 (1988) ............................................................................ 10

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) .............................................................................. 17, 18

*Westlands Water Dist. Distribution Dist. V. Natural Resources Defense Council, Inc.,*
    276 F. Supp. 2d 1046 (2003) ..................................................................... 10

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) .................................................................................... 13

**Statutes**

17 U.S.C. § 106(1) ................................................................................................ 22

17 U.S.C. § 106(2) ................................................................................................ 22

17 U.S.C. § 411 ..................................................................................................... 11

17 U.S.C. § 411(a) ................................................................................................ 10

17 U.S.C. § 512(c) ................................................................................................ 12

17 U.S.C. § 512(i) ................................................................................................. 22

17 U.S.C. ¶ 512(c)(1)(C) ...................................................................................... 22

28 U.S.C. § 1404(a) ............................................................................. 2, 16, 17, 18

28 U.S.C. § 2201 ................................................................................................... 13

28 U.S.C. §§ 1391(b)(1) ....................................................................................... 17

28 U.S.C. §§ 1391(b)(2) ....................................................................................... 17

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- iv -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

In its complaint, Veoh Networks, Inc. ("Veoh") purports to sue some of the record and music publishing companies within the Universal Music Group ("UMG") – the world's largest music company – for declaratory relief.  Veoh seeks a judicial declaration that it is entitled to blanket and permanent, retrospective and prospective, immunity under Section 512(c) of the Copyright Act for its "video sharing" service.  However, in its haste to forum shop and wage a publicity campaign, Veoh has failed to properly invoke this Court's jurisdiction.

Indeed, although Veoh purports to seek a declaration for non-infringement of copyright, it does not identify even one specific copyrighted work in dispute.  Just as a complaint for infringement must allege the existence of at least one registered copyright for jurisdiction to attach, it only makes sense that a complaint seeking a declaration of non-infringement must do so as well.  Otherwise, jurisdiction would attach differently for plaintiffs and defendants – and that has never been the law.  Moreover, this is not the only reason that the Court lacks subject matter jurisdiction over Veoh's complaint.  Veoh's description of the purported "dispute" is so nebulous (indeed, Veoh does not identify a single specific act that is alleged to constitute infringement), that its complaint fails to satisfy the "case or controversy" requirement necessary to support federal subject matter jurisdiction.  At best, Veoh's complaint amounts to a request for an advisory opinion.

However, even if Veoh could cure its subject matter jurisdiction problems, its complaint should still be dismissed since Veoh filed this case for improper and tactical purposes including to facilitate a publicity campaign aimed to combat the public perception that Veoh is a "piracy-dependent company,"[1] to improve its negotiating leverage with UMG, and to forum shop – none of which are permissible uses of the Declaratory Judgment Act.

---

[1] *The Ogre In Veoh's Closet*, Valleywag (6/20/2007) (noting "many feature films available for download" on Veoh), *available at* http://valleywag.com/tech/youtube/the-ogre-in-veohs-closet-270695.php.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 1 -

DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER
CASE NO. 07 CV 1568 TJW

1       Alternatively, if the case is not dismissed outright, it should be transferred pursuant to 28

2   U.S.C. § 1404(a) to the Central District of California where it can be coordinated with several

3   related and pending lawsuits involving overlapping and identical issues of law and fact that have

4   been ongoing for almost a year – and where UMG sued Veoh on September 4, 2007.  The Central

5   District is not just the most convenient, efficient, and logical forum to resolve any copyright

6   disputes between the parties, Los Angeles also happens to be the *exclusive* forum *that Veoh itself*

7   *has selected*, and which it contractually imposes upon the public, to adjudicate claims against

8   Veoh.  Veoh furthermore also handles claims of copyright infringement in Los Angeles, where

9   Veoh's Senior Manager of Copyright Compliance and many of Veoh's top executives are based.

10  Veoh's attempt to avoid litigating in its own exclusive forum of choice, and where its own

11  copyright compliance operations are based, could not be a more telling sign of the improper

12  tactical purposes animating Veoh's preemptive suit in this Court.

13  **II.     FACTUAL BACKGROUND**

14    **A.     UMG's Infringement Battles With "File-Sharing" Mass Infringers.**

15      Since 1999, with the advent of the infamous Napster service, UMG, the rest of the music

16  industry, and other major copyright owners have had to deal with the phenomenon of the piracy of

17  their copyrighted works online through the use of "peer-to-peer" (also known as "p2p") file-

18  sharing networks.  Peer-to-peer file-sharing networks operate by connecting users' computers over

19  the Internet and enabling the users to download or "share" copies of files from one another.

20      In a series of copyright infringement suits litigated all the way to the United States

21  Supreme Court, UMG and other major copyright owners have succeeded in obtaining injunctive

22  relief and monetary damages against Napster (and its investors) and many other major peer-to-

23  peer file-sharing services that followed in Napster's wake including Kazaa, Scour, Bearshare,

24  Aimster, iMesh, and Grokster.[2]  During the same timeframe and against the backdrop of these

25  legal successes, lawful online sales of music through legitimate retailers, such as the iTunes store,

26  

---

27      [2] *See, e.g., M.G.M. Studios  v. Grokster, Ltd.*, 545 U.S. 913 (2005); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003).

28  

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 2 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1    have grown significantly, and many new opportunities have developed to license music and music

2    videos online through legitimate services that respect copyright.

3    **B.    UMG's Three Pending Actions In The Central District Of California Against**

4    **"Video Sharing" Sites .**

5         Recently the Internet has witnessed the proliferation of websites featuring video that can be

6    "streamed" over the Internet, including most notably the Internet website called YouTube.  Some

7    of these sites are popularly referred to as "video sharing" sites, because they enable "file-sharing"

8    of videos, and it is said that they feature "user-generated content."  In reality, however, much of

9    the content on "video sharing" sites consists of professionally made audiovisual works, including

10   music videos featuring UMG's copyrighted works.  These videos are not "generated" by the video

11   file-sharing site users in any sense other than the user "generates" unauthorized copies.

12         The "video sharing" sites present new opportunities for copyright owners, such as UMG, to

13   license their works for digital display and distribution.  UMG has entered into licenses granting

14   rights to a number of websites to display UMG's music videos over the Internet, including most

15   prominently a deal UMG struck with YouTube in late 2006.  UMG's licensed music videos are

16   among the most watched content on YouTube, where in a very short period of time they have been

17   viewed over 246 million times, and is the most popular "channel" on the entire YouTube site,

18   attesting to both to the popularity of UMG's copyrighted works and their value in drawing the

19   public to "video sharing" sites.

20         Some "video sharing" sites have, unfortunately, chosen to exploit music and music videos

21   featuring UMG's copyrighted works without obtaining the right to do so, without paying, and in

22   willful violation of UMG's rights under the copyright laws.  In late 2006, in the face of growing

23   infringement of its works on "video sharing," websites, UMG filed separate actions in the Central

24   District of California against Grouper, Bolt and MySpace, three companies that operate or sponsor

25   "video sharing" to illicitly profit from mass infringement of UMG's copyrights in sound recordings

26   and musical compositions.  *See* Glatstein Declaration, Exs. A, D, G (respective complaints).[3]  The

27   ───────────────────

         [3] Glatstein Declaration, Ex. A, Complaint in *UMG Recordings, Inc., et al. v. Grouper*

28   *Networks, Inc., et al.*, C.D. Cal. Case No. CV 06-06561 AHM (filed 10/16/2006); Ex. D.,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 3 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  three suits raise many overlapping issues of fact and law, for example: Grouper, Bolt, and

2  MySpace each encouraged the public to upload *thousands* of infringing videos to their websites

3  without using filters or people to screen them for copyright infringement; each has reproduced,

4  displayed and distributed thousands of copies of music videos that infringe copyrights owned by

5  UMG; and UMG has alleged each of these "video sharing" defendants (as well as their corporate

6  parents) is liable for direct infringement and indirect infringement of UMG's copyrights. *Id.* The

7  defendants have responded with similar defenses, and in particular each has given prominence to a

8  purported affirmative defense under the safe harbor provision of the "Digital Millennium

9  Copyright Act" (the "DMCA") codified in Section 512(c) of the Copyright Act.[4]

10       UMG's first-filed action, brought against Grouper, was assigned to Judge A. Howard Matz.

11  UMG's subsequently filed actions against Bolt and MySpace were transferred to Judge Matz as

12  "related cases."  All three cases are being overseen by a single Magistrate Judge, Honorable

13  Andrew J. Wistrich.  Because of the factual and legal overlap, Judge Matz ordered coordination of

14  discovery among the cases.  Glatstein Decl. Ex. J (3/1/2007 Amended Civil Minutes).  Under

15  Judge Matz's coordination order, Magistrate Judge Wistrich's determinations with respect to

16  specific discovery disputes bind other parties as to "*all* overlapping or jointly applicable discovery

17  disputes, including not only document requests but also issues arising out of depositions,

18  interrogatories and requests for admission." *Id.* (emphasis in original).  Additionally, to reduce the

19  likelihood witnesses would be burdened by multiple depositions, Judge Matz ordered defendants

20  to "undertake good faith efforts to coordinate" discovery with one another. *Id.*

21

22

23  Complaint in *UMG Recordings, Inc., et al. v. Bolt, Inc., et al.*, C.D. Cal. Case No. 06-06577 AHM
    (filed 10/16/2006); Ex. G, Complaint in *UMG Recordings, Inc. et al. v. MySpace, Inc., et al.*, C.D.
24  Cal. Case No. CV 06-07361 AHM (filed 11/11/2006).

25      [4] *See* Glatstein Decl. Ex. B (Grouper Answer ¶ 61, second affirmative defense); Ex. E
    (Bolt Answer p. 5, second affirmative defense); Ex. H (MySpace Answer pp. 9-10) (first
26  affirmative defense); Glatstein Decl. Ex. C (UMG/Grouper Joint Rule 26(f) Report) (Grouper
    identifies DMCA affirmative defense as the first "principal legal issue"); Ex. I (UMG/MySpace
27  Joint Rule 26(f) Report) (MySpace, same); Ex. F (UMG/Bolt Joint Rule 26(f) Report) (Bolt,
28  same).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 4 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

**C.    The Veoh "Video Sharing" Service.**

Veoh is a video "file-sharing" company that has chosen to exploit the copyrighted works of others without paying.  Following in the ignominious footsteps of Napster, Veoh created and operates a peer-to-peer service that Veoh and its users have used extensively for copyright infringement.  Veoh also operates a "video sharing" website (www.Veoh.com), where members of the public are invited to upload, display and "share" videos, similar to the websites of the three defendants in the pending suits in the Central District.  It is widely known and has been widely reported that Veoh has "copyright infringing material aplenty on its site."[5]

Veoh first achieved notoriety as a repository for hard core pornography, "drawing outsized attention from bloggers and other Internet users for its willingness to host racy videos that other sites prohibit." *Veoh Cleans Up Its Act, But Some Users Cry Foul*, Wall Street Journal (6/29/2006).  However, after repeatedly "sharing" infringing copies of full length pornographic motion pictures, Veoh was sued by a producer of pornographic movies and Veoh pulled its "adult" content – over 15% of the total content its was "sharing" with the public.  *Id.*[6]

More recently, Veoh has been in the news as a "hard core infringer,"[7] that eschews even the most basic safeguards against infringement that have been adopted by other video sharing sites.  As a recent New York Times article explained:

> [T]he major media companies think the firm [Veoh], backed by Time Warner and
> Michael Eisner, takes a cavalier attitude toward keeping copyrighted material off its
> service.  They complain that Veoh imposes no time limits on uploaded clips and
> will not embrace digital fingerprinting technology to filter out copyrighted-
> material.

---

[5] *Veoh file pre-emptive copyright lawsuit*, The Register (8/13/2007), *available at* http://www.theregister.co.uk/2007/08/13/veoh_dont_hit_us/.

[6] *See also Why Veoh Pulled the Plug On Porn*, Valleywag (6/30/2006), *available at* http://valleywag.com/tech/veoh/why-veoh-pulled-the-plug-on-porn-184737.php.

[7] *Forget about YouTube: Go To These Sites If You Want Hard Core Copyright Infringement*," TechCrunch (4/4/2007) (singling out Veoh as one of top destinations for "hard core copyright infringement"), *available at* http://www.techcrunch.com/2007/04/04/forget-youtube-go-to-these-sites-if-you-want-hard-core-copyright-infringing-content/.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 5 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1   Brad Stone, *Veoh vs. Copyright Holders: Is a War Brewing?*, New York Times (8/9/2007). Veoh

2   has, of course, chosen not to employ the typical safeguards used by competitors for a simple

3   reason: those safeguards work, and if employed would reduce the number of infringing works on

4   Veoh.com, which are the "main draw . . . for the piracy-dependent company."[8]

5          In late July 2007, respective representatives of UMG and Veoh held a meeting to discuss

6   UMG's investigation into Veoh's unauthorized use of UMG's copyrighted works. The parties

7   agreed the meeting would be treated as a settlement discussion covered by Rule 408 of the Federal

8   Rules of Evidence. The meeting did not result in any agreement and UMG continued its

9   investigation. *See* Veoh Complaint ¶ 64.

10  **D.    Veoh's Tactical Suit And Litigation In The Press.**

11         Shortly after the July meeting, on August 9, 2007, Veoh filed this declaratory judgment

12  suit naming as defendants precisely the same UMG entities that are plaintiffs in the three

13  infringement actions in the Central District (though these are by no means all the entities that

14  comprise the Universal Music Group). That is no coincidence; Veoh's counsel plainly studied

15  UMG's pleadings in the Central District and just listed the UMG plaintiffs in those actions as

16  declaratory defendants in this suit. Veoh's justification for bringing a federal lawsuit against UMG

17  is a purported "dispute" with UMG that Veoh summarizes in eight sentences notable for the dearth

18  of information they actually provide. *See generally* Veoh Complaint ¶¶ 61-67.

19         According to Veoh, at some unspecified time in "late July," some unspecified person

20  "threatened Veoh with the prospect of litigation at some point in the future." *Id.* ¶¶ 61-62. UMG

21  allegedly accused Veoh of "massively infringing upon UMG's copyrights" and furthermore,

22  "[i]ncluded in UMG's threats of litigation were indications that UMG was, or is currently,

23  investigating the alleged infringement." *Id.* ¶¶ 62, 64. Beyond the apparently threatening

24  "investigating," however, Veoh fails to identify *any* specific UMG work at issue or *any* specific

25  act by Veoh at issue. UMG allegedly provided no specifics: "UMG has not provided any

26  _____

27         [8] *The Ogre In Veoh's Closet*, Valleywag (6/20/2007) (noting "many feature films available
    for download" on Veoh), *available at* http://valleywag.com/tech/piracy/the-ogre-in-veohs-closet-

28  270695.php.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112                                    - 6 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1    information about the alleged infringement that would allow Veoh to adequately assess UMG's

2    threats"; Veoh is "[w]ithout concrete knowledge of its rights or the likelihood of future litigation";

3    and "UMG has not stated with any particularity a level of damages suffered due to the alleged

4    infringement." Veoh Complaint ¶¶ 65- 67. Elsewhere in it Complaint, Veoh is emphatic that

5    Veoh has no independent knowledge regarding *any* infringement: "Veoh does not have

6    knowledge of any activity or material on its system that is infringing alleged UMG copyrights and

7    is not aware of facts or circumstances from which the infringing activity is apparent," *id.* ¶ 29;

8    "Veoh has no actual knowledge nor is aware of any facts suggesting that infringing activity is

9    apparent." *id.* ¶ 78; Veoh "lack[s] knowledge regarding any alleged infringement." *Id.* ¶ 84.

10    Veoh, in sum, professes complete ignorance about *any* basis for *any* claim as to *any* UMG

11    copyright. The ballyhooed "threat" that purportedly justified a federal suit reduces to UMG

12    accusing Veoh of being an infringer – which, as the articles cited above show, is an allegation

13    Veoh has heard many times before from other content owners – and "indications" that UMG is

14    "investigating alleged infringement." Nothing in Veoh's nebulous description explains Veoh's

15    race to the courthouse or its dramatic, unsupported assertion that "without concrete knowledge of

16    its rights or the likelihood of future litigation, Veoh cannot operate effectively as a business." *Id.*

17    ¶ 66. The nebulous "threat" and Veoh's emphatic lack of any knowledge about its alleged

18    infringement is of course not sufficient to invoke federal court jurisdiction. Veoh's contrary

19    conclusion – that litigation against UMG is a business imperative without which Veoh "cannot

20    operate" – is a non sequitur.

21    The truth about the real reasons Veoh rushed to file this action soon emerged, however,

22    when simultaneous with filing suit Veoh issued a press release entitled "Veoh Takes Action To

23    Protect Rights of Copyright Complaint [sic] Companies Offering Innovative Online Content

24    Solutions."[9] Veoh's new CEO, Mr. Steve Mitgang, called numerous reporters to spin the story,

25    and Veoh's Chief Scientist immediately updated Veoh's Wikipedia entry to proclaim "In a bold

26    ──────────

    [9] Veoh's press release dated 8/9/07, *available at* http://www.veoh.com/corporate/
27    aboutUs.html. Rather than just report on the suit, the Veoh press is filled with self-serving
    propaganda about Veoh's respect for copyright and its interest in working with content owners,
28    *e.g.,*: "Veoh is actively taking steps to create a copyright friendly environment. . . . "

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 7 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1    move, Veoh has sued Universal Music Group" and to provide Wikipedia's readers with a link the

2    Reuters' article quoting Veoh's CEO's spin on the suit.[10]

3        Veoh's CEO, Mitgang, was forthcoming in explaining to one reporter that "the reason

4    Veoh took this action is because the company wanted the courts, content owners and others to

5    know that it is compliant with DMCA and Fair Use rules and has been working with content

6    owners to put best practices in place."[11] In other words, "the reason" Veoh took its action against

7    UMG had nothing to do with UMG's purported "threat." Rather, "the reason" for the suit was to

8    get publicity for Veoh's message that Veoh is a "white-hat company."[12] Indeed, regarding UMG,

9    Veoh's CEO stated, "I still hope to work constructively with Universal,"[13] *i.e.*, no hard feelings,

10    Veoh considers this a negotiation and still wants to strike business deal, not litigate.[14]

11

12

---

13    [10] *See* Veoh's Wikipedia entry, *available at* http://en.wikipedia.org/wiki/Veoh. The
History section of this page shows the "bold move" comment was added by Ted Dunning, Veoh's

14    Chief Scientist. Mr. Dunning also added a link to the Reuters article about the suit in which
Veoh's CEO was interviewed and gives Veoh's spin. *See id.* (citing Kenneth Li, *Veoh seeks court*

15    *protection from Universal Music* (8/9/2007), *available at*

16    http://www.reuters.com/article/internetNews/idUSN0923286220070809.

     [11] Quoted in Om Malik, *In Reversal of Roles, Veoh Sues Universal*, (8/9/2007), *available*

17    *at* http://newteevee.com/2007/08/09/in-reversal-of-roles-veoh-sues-universal/.

18       [12] Brad Stone, *The Boat Is About To Rock (Again) In Internet Video*, New York Times
(6/15/2007) (quoting Veoh board member and Director Todd Dagres, but noting rights holders'

19    complaints "that Veoh has fallen behind in protecting intellectual property"). Veoh's blatant
publicity agenda caused Daily Variety to quip: "it's possible Veoh, which has a new CEO who has

20    vowed to get the firm more attention, just wants some publicity. Now that would be a different

21    kind of viral campaign." *Veoh Battles Universal Music*, Daily Variety (8/10/2007), available at
http://www.variety.com/article/VR1117970046.html?categoryid=2525&cs=1

22       [13] Quoted in *Veoh seeks court protection from Universal Music,* Reuters (8/9/2007),

23    *available at* http://www.reuters.com/article/industryNews/idUSN0923286220070813.

24       [14] Veoh's publicity campaign, like so many, is fundamentally dishonest, and does nothing
to change the fact that Veoh is a notorious copyright infringer that fosters and profits from an

25    environment of hardcore copyright piracy. Putting the big picture aside, Veoh's CEO, moreover,
could not even get his facts straight about the lawsuit, stating, for example, that "We're not suing

26    them. We're not seeking damages." Quoted in *Veoh seeks court protection from Universal Music,*
Reuters (8/9/2007), *supra* n.11. Veoh's press release similarly states the falsehood that the "action

27    does not seek payment from UMG for damages." Veoh did sue UMG and is seeking damages.
Veoh's Complaint – Prayer for Relief ¶ g (asking that "Veoh be awarded its damages").

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 8 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1    **E.    UMG's Suit Against Veoh.**

2    Veoh's preemptory suit left UMG with no choice but to take action.  UMG intensified its

3    investigation into Veoh and its activities.  UMG carefully analyzed Veoh's operations and

4    collected evidence confirming that Veoh is engaging in the rampant direct and indirect

5    infringement of thousands of UMG's works.  UMG then prepared and has just filed a Complaint

6    against Veoh in the Central District of California.  *See* Glatstein Decl. Ex. K (*UMG Recordings,*

7    *Inc., et al. v. Veoh Networks, Inc.*, C.D. Cal. Case No. CV 07-5744 GW (RCx) (filed 9/4/2207).

8    UMG concurrently filed a related case notice and it expects that like the three earlier-filed actions,

9    it will be assigned to Judge Matz.  Glatstein Decl. Ex. L.

10    The plaintiffs in UMG's suit against Veoh are copyright owners that UMG's pre-filing

11    investigation determined have copyrighted works that are being infringed by Veoh.  The plaintiffs

12    include the companies pursuing the co-pending suits against Grouper, MySpace and Bolt (UMG

13    Recordings, Inc., Universal Music Corp., Song of Universal, Inc., Universal-Polygram

14    International Publishing, Inc., Rondor Music International, Inc.).  In addition, three other UMG

15    publishing companies (Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, and

16    Universal Music – MBG Music Publishing, Ltd.) have asserted claims against Veoh for

17    infringement of their works.  *Id.*  These entities were not named as declaratory defendants by

18    Veoh, which apparently conducted no pre-filing investigation of its own.

19    UMG's Complaint properly puts in controversy an actual dispute that is ripe for

20    adjudication.  It describes in detail the basis for UMG's claim that Veoh is a direct and indirect

21    infringer of thousands of UMG's copyrights.  Veoh can no longer profess ignorance.  In

22    responding to UMG's complaint, Veoh will have the opportunity to address the actual issues in

23    dispute between the parties.

24    **III.    VEOH'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT**

25    **MATTER JURISDICTION**

26    Veoh bears the burden of establishing the existence of subject matter jurisdiction.

27    *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("a party seeking a

28    declaratory judgment has the burden of establishing the existence of an actual case or

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 9 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  controversy[.]").[15]  Article III of the U.S. Constitution prohibits federal courts from issuing

2  advisory opinions, they therefore may not entertain nebulous disputes as they are "'are not pressed

3  before the Court with that clear correctness provided when a question emerges *precisely framed*

4  *and necessary for decision.*"  *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968) (emphasis added)

5  (citation omitted).  Absent a "definite and concrete" dispute, there is no subject matter jurisdiction.

6  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (citation omitted).  Accordingly,

7  "in the declaratory judgment context, the Supreme Court has admonished that '[t]he disagreement

8  *must not be nebulous* or contingent *but must have taken on fixed and final shape* so that a court

9  can see what legal issues it is deciding, what effect its decision will have on the adversaries, and

10  some useful purpose to be achieved in deciding them.'"  *United States v. Arnold*, 678 F. Supp.

11  1463, 1465-66 (S.D. Cal. 1988) (emphasis added) (citation omitted); *see also Westlands Water*

12  *Dist. Distribution Dist. V. Natural Resources Defense Council, Inc.*, 276 F. Supp. 2d 1046, 1050

13  (E.D. Cal. 2003) (the "Supreme Court has repeatedly recognized the increased likelihood that

14  declaratory judgment actions will fall outside Article III.").  Moreover, because Veoh seeks a

15  declaration under the Copyright Act, Veoh must a further threshold subject matter jurisdiction

16  requirement: "[N]o action for infringement of the copyright in any United States work shall be

17  instituted until registration of the copyright claim has been made" with the Copyright Office. 17

18  U.S.C. § 411(a).

19         Veoh's Complaint fails to meet both Article III's case or controversy requirement and the

20  Copyright Act's subject matter jurisdiction requirement under Section 411.  Veoh's request for an

21  advisory opinion should be dismissed on these two independent grounds.

22  **A.**      **Veoh Fails To Identify A "Precisely Framed" or "Definite And Concrete" Dispute.**

23         What exactly is Veoh's dispute with UMG about?  According to Veoh's pleading, UMG

24  claims Veoh is an infringer, and Veoh denies it.  Beyond that, Veoh knoweth not.  "Veoh does not

25  have knowledge of any activity or material on its system that is infringing alleged UMG

---

26      [15] *Staacke v. U.S. Secretary of Labor*, 841 F.2d 278, 280 (9th Cir. 1988) (citation omitted)
(affirming dismissal for lack of subject matter jurisdiction) ("It is well settled that the Declaratory
27  Judgment Act 'does not itself confer federal subject matter jurisdiction,' but merely provides an
additional remedy in cases where jurisdiction is otherwise established.").
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112                                         - 10 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  copyrights and is not aware of facts or circumstances from which the infringing activity is

2  apparent[.]" Veoh Complaint ¶ 29. UMG allegedly "has not provided any information about the

3  alleged infringement that would allow Veoh to adequately assess UMG's threats." *Id.* ¶ 65. And

4  Veoh is "[w]ithout concrete knowledge of its right or the likelihood of future litigation," it "has no

5  actual knowledge nor is aware of any facts suggesting that infringing activity is apparent," and it

6  "lack[s] knowledge regarding any alleged infringement." *Id.* ¶¶ 66, 78, 84.

7         With due respect, if Veoh itself does not know what this case concerns, then neither can

8  the Court. And, as such, the "dispute" described by Veoh is neither "precisely framed" nor

9  "definite and concrete" so as to confer on this court subject matter jurisdiction.

10    **B.**    **Veoh Fails To Identify Any Registered Copyright In Dispute.**

11        Which UMG copyrighted works are at issue in this case? Veoh does not say, and says it

12 does not know. Veoh does not identify even one registered copyright in dispute as required by 17

13 U.S.C. § 411 as a condition precedent to this Court's exercise of subject matter jurisdiction. 2

14 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a] (2007). On this

15 independent basis, Veoh's complaint must be dismissed for lack of subject matter jurisdiction.

16 *See, e.g., Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1112 (W.D. Wash. 2004)

17 (dismissing claims not in compliance with § 411 "for lack of subject matter jurisdiction"); *RDF*

18 *Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 562 (C.D. Cal. 2005) (§ 411 is a

19 "condition precedent for a court to exercise jurisdiction in an infringement action").[16]

20    **C.**    **Veoh Seeks An Impermissible Advisory Opinion.**

21        Unmoored from any actual, concrete dispute as to even one registered UMG work, Veoh

22 seeks an unqualified declaration it is not a direct, contributory, or vicarious infringer of *any* UMG

23
24
25
26
27
28
    [16] Veoh should have done its homework before suing. Veoh could, for example, have easily have used Veoh's own search tools to locate UMG works on Veoh's website, Veoh.com, where there are thousands of UMG copyrighted works to be found. Veoh could have used the public records of the Copyright Office to obtain registration numbers. But actually investigating the infringement of UMG works would have forced Veoh to act against its policy of turning a blind eye and demolished Veoh's incredible claim it is completely ignorant of any infringement. The alternative would have been for Veoh to just pick one or two UMG copyright registrations as examples of works that may or may not be in dispute, but that, of course, would have just highlighted the extent to which Veoh is seeking an advisory opinion.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

1748112

- 11 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  copyright and that Veoh it is not inducing infringement of *any* UMG copyright.  Veoh Complaint

2  ¶ 5 & and Prayer for Relief ¶¶ c-d.  To provide the declaration sought by Veoh, the Court would

3  be required to scrutinize every aspect of Veoh's business and all of Veoh's conduct to negate the

4  possibility that Veoh is a direct, contributory, or vicarious infringer (and ruling out Veoh's

5  inducing infringement) as to *any* UMG copyright.  Veoh's request for a wide-ranging declaration

6  divorced from any specific dispute is an extreme example of a impermissible request for an

7  advisory opinion.  *See Coalition for a Healthy California v. F.C.C.*, 87 F.3d 383, 386 (9th Cir.

8  1996) (dismissing declaratory judgment complaint where the plaintiff was "not seeking . . . to

9  resolve a specific dispute . . . federal courts have never been empowered to render advisory

10  opinions") (citation omitted).

11      Veoh further requests that the Court declare that "Veoh, as a host of third-party web-based

12  content, is entitled to safe harbor pursuant to 17 U.S.C. § 512(c)."  Veoh Complaint ¶ 5.  Section

13  512(c) of the DMCA provides an affirmative defense.  *See Corbis Corp. v.  Amazon.com, Inc.*, 351

14  F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004) (DMCA is affirmative defense).  Veoh's attempt to

15  obtain a broad declaration about its anticipated this affirmative defense in the factual vacuum of

16  Veoh's pleading similarly invites an advisory opinion .[17]  Contrary to Veoh's suggestion, Section

17  512(c) does not accord some sort of blanket immunity from infringement liability to which a

18  company may be "entitled" or not.  To the contrary, the DMCA safe harbor under Section 512(c)

19  applies *only* to *specific activities* of companies that qualify as "service providers" – namely

20  "storage at the direction of a user of material that resides on a system or network controlled or

21  operated by or for the service provider" (and only then if the "service provider" meets all the other

22  requirements).  17 U.S.C. § 512(c).  Given Veoh's failure to identify any specific infringing

23  _____

      [17] Declaratory judgment actions that are just attempts to anticipate affirmative defenses are

24  disfavored, and "numerous courts have refused to grant declaratory relief to a party who has come
   to the court only to assert an anticipatory defense." *Gribin v. Hammer Galleries, a Div. of*

25  *Hammer Holding, Inc.*, 793 F. Supp. 233, 235 (C.D. Cal. 1992) (citing, *inter alia*, *Armerada
   Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967); *Cunningham Bros., Inc. v. Bail*, 407

26  F.2d 1165, 1167 (7th Cir. 1969)).  For example, the Court in *State Farm Fire and Cas. Co. v.
   Taylor*, 118 F.R.D. 426 (M.D. N.C. 1988), examined the issue in detail and concluded that "[t]he

27  anticipation of defenses is not a proper use of the declaratory judgment procedure." *Id.* at 429-30
   (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976)).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 12 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  conduct in dispute, it is not possible to determine whether analysis of Section 512(c) is warranted

2  at all, much less applicable to some unspecified Veoh conduct with respect to an unspecified

3  UMG work.

4      The misguided nature of Veoh's attempt to obtain an advisory ruling on an affirmative

5  defense without reference to a specific claim of infringement can be further appreciated when one

6  leaves the abstraction of Veoh's nebulous Complaint, and considers instead the particular acts of

7  infringement alleged by UMG in its Complaint.  Among other things, UMG alleges that Veoh

8  operates a Napster-like peer-to-peer network called "Veohnet" that is used to facilitate copyright

9  infringement; Veoh distributes free software to facilitate copyright infringement; Veoh reformats

10 videos to so they can be downloaded more easily to a variety of platforms; Veoh provides the

11 public with free downloads of videos on demand.  This Veoh conduct, alleged by UMG as part of

12 the basis for its claims, has nothing remotely to do with "storage at the direction of a user," or the

13 DMCA safe harbor provisions.

14     In sum, Veoh is not entitled to any advisory opinion, whether framed as a wide-ranging

15 request concerning all of Veoh's conduct and all of UMG's copyright, or a request for an opinion

16 about the hypothetical applicability of a single affirmative defense.  Veoh's complaint should be

17 dismissed for lack of subject matter jurisdiction.

18 IV.    **VEOH'S TACTICAL SUIT SHOULD BE DISMISSED AS AN ABUSE OF THE**

19         **DECLARATORY JUDGMENT ACT**

20     Even if Veoh's pleadings were sufficient to articulate a "case or controversy," the Court

21 should still dismiss Veoh's Complaint as a matter of its discretion because Veoh filed it for an

22 improper tactical purposes.  The exercise of jurisdiction in a declaratory judgment action is

23 discretionary.  28 U.S.C. § 2201 (the Court "*may* declare the rights and other legal relations...");

24 *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (the Declaratory Judgment Act provides

25 "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the

26 rights of litigants").  Courts have held that it is an abuse of the Declaratory Judgment Act to file

27 suit for tactical purposes.  *Gribin v. Hammer Galleries, a Div. of Hammer Holding, Inc.*, 793 F.

28 Supp. 233, 236 (C.D. Cal. 1992) (Declaratory Judgment Act "is not a tactical device whereby a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 13 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1   party who would be a defendant in a coercive action may choose to be plaintiff if he can beat the

2   other party to the courthouse") (quotation marks and citations omitted).  For that reason, courts

3   decline to exercise jurisdiction over declaratory judgment matters if they appear to have been file

4   for tactical purposes.

5       For example, in *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996), *overruled in*

6   *part on other grounds*, *MedImmune, Inc. v. Genentech, Inc.*, --- U.S. ---, 127 S. Ct. 764 (2007), the

7   declaratory judgment plaintiff  "had taken the step [of filing suit] because its management 'thought

8   it was in their interest to protect themselves first and continue discussions.'" *Id.* at 809 (quoting

9   plaintiff's attorney).  The district court concluded and the Federal Circuit agreed that "to allow a

10  declaratory judgment action to proceed under such circumstances would encourage parties who

11  were negotiating with patentees to use the declaratory judgment procedure to improve their

12  bargaining positions." *Id.* at 810.

13      This disapproval of tactical, premature declaratory judgment filings accords with the

14  decisions of other courts that "it would be inappropriate to reward—and indeed abet—conduct

15  which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and

16  conservation of judicial resources." *Davox Corp. v. Digital Systems Intern., Inc.*, 846 F. Supp.

17  144, 148 (D. Mass. 1993); *see also, e.g.*, *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155,

18  1160 (W.D.N.Y. 1987) (refusing to exercise jurisdiction); *Columbia Pictures Indus., Inc. v.*

19  *Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977) (staying first-filed action) ("[a]s federal court

20  calendars become increasingly burdened, attorneys should exercise a correspondingly increased

21  responsibility to attempt to resolve disputes without using limited judicial resources to decide

22  issues which might, by reasonable discussions between reasonable people, be settled out of

23  court").

24      In its rush to create good buzz about Veoh as a "white-hat" company, Veoh brought suit

25  prematurely.  According to Veoh, it did not know the basis for an infringement claim and UMG

26  stated that it was "investigating" Veoh – nothing more.  Veoh's CEO apparently did not think that

27  the discussions with UMG were over, and he made a point of telling a reporter "I still hope to

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 14 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  work constructively with Universal."[18]  Veoh apparently hoped that filing its Complaint would

2  improve its bargaining position vis-à-vis UMG in a negotiation.

3       As shown by Veoh's "serving" a press release in tandem with launching the suit, its

4  immediate "bold move" update of Veoh's Wikipedia entry and numerous calls Veoh's CEO put in

5  to reporters, Veoh brought suit *not* because of the need to remove any "Damoclean threat of

6  impending litigation,"[19] but rather as a public relations move.  Again, in the words of Veoh's

7  CEO, "the reason Veoh took this action is because the company wanted the courts, content owners

8  and others to know that it is compliant with DMCA and Fair Use rules and has been working with

9  content owners to put best practices in place."[20]  Notably absent in this explanation is any mention

10  of UMG's supposed "threat."  Veoh's message to the "courts,[21] content owners and others" is

11  rather Veoh's "white-hat company" theme.  What "the company wanted" the world "to know"

12  includes issues that are not even part of Veoh's preemptory Complaint, e.g., that Veoh is allegedly

13  compliant with the "fair use rules" and that it is working "to put best practices in place."

14       The tactical nature of Veoh's suit is further revealed when one considers Veoh's choice of

15  venue; specifically, its decision to evade the Central District of California.  Even ignoring the

16  efficiencies and cost-savings that would be derived from filing in the Central District where the

17  related litigation with overlapping and identical issues has been underway for nearly a year, the

18  Central District, specifically Los Angeles, is Veoh's own forum of choice.  Veoh's Terms of Use

19  ("TOU"), which Veoh purports protect Veoh from liability provide: "You expressly consent to the

---

20  [18] Kenneth Li, *Veoh seeks court protection from Universal Music* (8/9/2007), *available at*
21  http://www.reuters.com/article/industryNews/idUSN0923286220070813

22  [19] "The purpose of the Declaratory Judgment Act is 'to relieve potential defendants from
the Damoclean threat of impending litigation which a harassing adversary might brandish, while
23  initiating suit at his leisure -- or never.'" *Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*, 896
F.2d. 1542, 1556 (9th Cir. 1989) (quoting *Societe de Conditionnement v. Hunter Engineering Co.*,
24  655 F.2d 938 , 943 (9th Cir. 1981)).

25  [20] Quoted in Om Malik, *In Reversal of Roles, Veoh Sues Universal*,  (8/9/2007), *available
at* http://newteevee.com/2007/08/09/in-reversal-of-roles-veoh-sues-universal/.

26  [21] It is unclear what Mr. Mitgang had in mind by "courts."  Veoh is currently a defendant in
the case of *Io Group v. Veoh, Networks*, N.D. Cal. Case No. C06-3926 HRL, in which Veoh was
27  sued for infringing certain gay male pornographic movies during a three week period.  The parties
28  recently filed cross-motions for summary judgment.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 15 -

1    personal and exclusive jurisdiction and venue of the state and federal courts located in Los

2    Angeles County of the State of California for any claim or action arising out of or relating to these

3    TOU or your use of the Veoh Service."  Glatstein Decl. Ex. M (Veoh Terms of Use).  A link to

4    Veoh's TOU is right on Veoh's home page.  *See* Veoh – Terms of Use, *available at*

5    http://www.veoh.com/corporate/termsofuse.html.  Veoh's Complaint makes Veoh's TOU a critical

6    component of Veoh's theory of why it is not liable to UMG: "the TOU agreement contained on

7    Veoh.com protects Veoh from any claims for violation of copyright . . . Because all registered

8    users of Veoh.com must electronically accept the TOU, Veoh is not liable for content posted by

9    registered users." Veoh Complaint ¶¶ 73-74; *see also id.* ¶¶ 35-38, 44 (citing TOU).  Veoh's flight

10   from its own *exclusive* forum of choice – Los Angeles – to file this preemptory suit could not be

11   more telling that its choice of forum was driven by tactical considerations.

12         Forum shopping, and using a declaratory judgment suit to improve bargaining leverage and

13   as a vehicle to spin positive press, are wholly improper uses of the Declaratory Judgment Act.

14   The exercise of jurisdiction under the circumstances at bar would reward tactical behavior and

15   create an incentive to file a declaratory judgment action for purposes wholly unrelated to the

16   declaration of the litigants' rights. [22]  The Court should not reward Veoh's tactics, but it rather

17   should decline to exercise its discretionary jurisdiction and dismiss on that second independent

18   basis.

19   **V.    IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO THE**

20         **CENTRAL DISTRICT**

21         "For the convenience of the parties and witnesses, in the interests of justice, a district court

22   may transfer any civil action to any other district or division where it might have been brought."

23   28 U.S.C. § 1404(a).[23]  The Supreme Court has explained that "the purpose of [§ 1404(a)] is to

---

24       [22] Indeed, Veoh will have the opportunity to litigate its defenses under the DMCA by

25   virtue of UMG's Central District Complaint against Veoh.

26       [23] 28 U.S.C. § 1404(a) "serves as a statutory substitute for forum non conveniens in federal
     court when the alternative forum is within the territory of the United States." *Ravelo Monegro v.*

27   *Rosa*, 211 F.3d 509, 512-13 (9th Cir. 2000).  Accordingly, "*forum non conveniens* considerations
     are helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*,

28   805 F.2d 834, 843 (9th Cir. 1986).  Because of their common law history, courts sometimes relate

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 16 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public

2  against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616

3  (1964) (internal quotation marks and citations omitted) (quoting *Continental Grain Co. v. The*

4  *FBL-585*, 364 U.S. 19, 26, 27 (1960)); *see also Continental Grain Co.* 364 U.S. at 26-27

5  (affirming transfer to district court with similar action).

6        It understates matters to say this case *could* have been brought in the Central District.  But

7  for tactical maneuverings it *should* have been brought there.  While dismissal outright is

8  preferable, transfer would at least facilitate coordination between Veoh's action and UMG's similar

9  actions against other video-sharing websites.  Transfer serves the interests of justice and also the

10 convenience of the parties and witnesses.

11 A.    **Veoh Could Have Brought, And Should Have Brought, Its Action in the Central**

12        **District.**

13        A transfer is only proper to a district where the action "might have been brought."  28

14 U.S.C. § 1404(a).  Veoh could have brought its action in the Central District of California for three

15 independently sufficient reasons: First, UMG was subject to personal jurisdiction in the Central

16 District, 28 U.S.C. §§ 1391(b)(1), 1391(c); second, a "substantial part of the events or omissions

17 giving rise to the claim occurred" in the Central District, 28 U.S.C. §§ 1391(b)(2); and third, "a

18 substantial part of property that is the subject of the action is situated" in the Central District, 28

19 U.S.C. §§ 1391(b)(2).  A transfer to the Central District meets the first requirement of 28 U.S.C.

20 § 1404(a).  As noted, moreover, Los Angeles, is also Veoh's own chosen *exclusive* forum for

21 adjudicating matters concerning TOU that Veoh contends is central to its defense and to resolve

22 disputes concerning the Veoh services that will front and center in any litigation concerning

23 Veoh's infringing activities.

24

25

26 the § 1404(a) "convenience" test to the *forum non conveniens* "private interest factors," while the
   interest of justice test corresponds to the *forum non conveniens* concept of "public interest

27 factors."  *See, e.g., Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash.
   2005).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 17 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

**B.** **The Interest of Justice Favors Transfer to Facilitate Coordination with UMG's Pending Actions Against Other "Video-Sharing" Services.**

A transfer is proper where—as here—it is "in the interest of justice." 28 U.S.C. § 1404(a). The "interest of justice" analysis requires that courts consider the superior forum for "'ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) (quoting *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). The interest of justice analysis may be an independently sufficient basis for transfer: "'Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Id.* (quoting *Regents of the University of California v. Eli Lilly and Company*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)).

Transfer to the Central District is in the interest of justice because it will allow coordination with UMG's pending actions against Grouper, Bolt, and MySpace. As the Supreme Court explained, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co.*, 364 U.S. at 26; *see also Heller Financial, Inc.*, 883 F.2d at 1293 (courts should consider the benefit from "trying related litigation together, and having a judge who is familiar with the applicable law try the case").

Facilitating coordination of related cases within a single district precisely tracks the policy rationale behind § 1404(a) as articulated by the Supreme Court in *Van Dusen* and *Continental Grain Co*. Accordingly, transfer to a district with a pending, related case is a frequently-cited and independently sufficient basis for a transfer. *See also A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. Of California*, 503 F.2d 384, 389 (9th Cir. 1974); *Jolly v. Purdue Pharma L.P.*, 2005 WL 2439197 (S.D. Cal. 2005) (transferring to district with pending similar action); *Republic of Bolivia v. Philip Morris Cos., Inc.*, 39 F. Supp. 2d 1008, 1009-10 (S.D. Tex. 1999) (same); *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) (same); *Durham*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 18 -

DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER
CASE NO. 07 CV 1568 TJW

1  *Prods, Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982)

2  (same).[24]

3        For example, in *A.J. Industries*, 503 F.2d at 389, the Ninth Circuit upheld a district court's

4  transfer order based in part on the existence of a pending, related action in another district.  The

5  *A.J. Industries* Court explicitly rejected the contention that anything less than complete

6  consolidation was necessary before granting a transfer motion: "[E]ven the pendency of an action

7  in another district is important because of the positive effects it might have in *possible*

8  *consolidation of discovery and convenience to witnesses and parties.*"  *Id.* (emphasis added)

9  (citing *Schneider v. Sears*, 265 F. Supp. 257 (S.D.N.Y. 1967)).  As *Schneider* explains,

10        There is a strong policy favoring the litigation of claims in the same tribunal in

11        order that: (1) pretrial discovery can be conducted more efficiently; (2) the

12        witnesses can be saved time and money, both with respect to pretrial and trial

13        proceedings; (3) duplicitous litigation can be avoided, thereby eliminating

14        unnecessary expense to the parties and at the time serving the public interest; (4)

15        inconsistent results can be avoided.

16  256 F. Supp. at 266-27.  *See also Durham Products*, 537 F. Supp. at 1244 ("litigation of related

17  claims in the same tribunal is strongly favored because it facilitates *efficient, economical and*

18  *expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and*

19  *inconsistent results*") (emphasis added; citation and quotation marks omitted).

20        Similarly, *Republic of Bolivia*, 39 F. Supp. 2d at 1008, involved one of several actions by

21  various foreign governments against tobacco companies.  In that case, the district court *sua sponte*

22  transferred the action from Texas to the District of Columbia, explaining that transfer would allow

23  for consolidation with six other pending actions by other foreign governments against tobacco

24  companies.  *Id.* at 1009 ("proceedings brought by the Republic of Guatemala are currently well

25  underway in that Court in a related action"); *see also Jolly v. Purdue Pharma L.P.*, 2005 WL

26

27        [24] *See also Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 843 (S.D.N.Y. 1993)

28  (transferring, despite parties' forum selection clause, to avoid duplicative litigation).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 19 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  2439197 (S.D. Cal. 2005) (explaining that the interest of justice "strongly" favors transfers from

2  S.D. Cal. to S.D.N.Y. where similar litigation was pending).

3        Veoh's decision to file in the Southern District rather than the Central District despite the

4  detriment to overall judicial economy caused by inefficient, parallel litigations, was motivated by

5  tactical considerations that are antithetical to the interests of justice. As but a few examples of the

6  predictable inefficiency likely to result from Veoh's forum choice: two courts will need to

7  familiarize themselves with the copyright law applicable to websites; two courts will need to study

8  the case law relating to the DMCA; two courts will need to familiarize themselves with the

9  technical operation of "video sharing" sites; two courts will need to learn about the music industry

10  in general, and UMG in particular, in order to resolve issues relating to copyright ownership and

11  damages; two courts will need to hear motions for protective orders by third-parties, and third-

12  parties will need to bring two such motions. In short, the parallel, uncoordinated litigation of

13  similar actions with overlapping and some instances identical issues in the Southern District and

14  Central District would result in a certain but preventable waste of judicial resources, and the

15  parties' and non-parties' time and money. Accordingly, the interest of justice strongly favors

16  transfer to the Central District.

17        Finally, some courts consider relative docket congestion, measured by the median number

18  of months from filing to trial, as part of the transfer analysis, reasoning that the interest of justice

19  is served by a transfer to a relatively less congested district. *See Saleh*, 36 F. Supp. 2d at 1167

20  (comparing median time from filing a suit until trial in S.D. Cal. and E.D. Va., and transferring to

21  the latter). According to the most recent *Annual Report of the Director: Judicial Business of the*

22  *United States Courts*, the median time interval between filing and trial in the Southern District is

23  33.0 months, while the median time interval between filing and trial in the Central District is 21.3

24  months, a difference of over one year, or approximately 55% longer. Glatstein Decl. Ex. U (2006

25  Annual Report of the Director). The facts that the Central District is relatively less congested

26  further militates in favor of transfer. It also further belies any pretense by Veoh that it brought suit

27  to obtain a speedy resolution of an actual controversy rather than for tactical purposes.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 20 -

1    **C.**    **Convenience of the Witnesses and Parties Favor Transfer.**

2    To evaluate the convenience associated with a transfer, courts consider, (i) the convenience

3    of the parties; (ii) convenience of the witnesses; and (iii) ease of access to evidence. *Decker Coal*

4    *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In short, this prong requires

5    consideration of "'all … practical problems that make a trial easy, expeditious and inexpensive.'"

6    *Id.* (citing and quoting *Gulf Oil Corp. v Gilbert*, 330 U.S. 501, 508 (1947)). These factors weigh

7    strongly in favor of a transfer to the Central District.[25]

8    The location of evidence in the Central District favors transfer.[26]  *In re Horseshoe*

9    *Entertainment*, 305 F.3d 354, 358 (5th Cir. 2002) (location of books and records weighs in favor

10    of transfer). Veoh identifies Los Angeles as one of its two principal offices, and many of its

11    employees work there, including its Senior Manager – Copyright Compliant, Stacie Simons.[27] *See*

12    Glatstein Decl. Ex. HH. In particular, the Veoh's website identifies seven members of Veoh's

13    executive team, all of whom are likely to have relevant knowledge concerning Veoh's operations,

14    including for example Veoh's knowledge of widespread infringement on Veoh.com, Veoh's

15    decision to not to use filters to screen for copyright infringement, and Veoh's business reasons for

16    engaging UMG in copyright litigation. Based on publicly available information, UMG believes

17    that at least three of Veoh's top executive team members are based in Los Angeles. Glatstein

18    Decl. Exs. Q, R, S & T (Messrs. Bilger, Eisner, and Metzger). Furthermore, Veoh's Senior

19    [25] Of course, as explained above, if the "interest of justice" overwhelmingly favors

20    transfer—as it does here—the Court may transfer the case even if the convenience of the parties militates against transfer. *Amazon.com*, 404 F. Supp. 2d at 1261 (quoting *Regents of the University*

21    *of California*, 119 F.3d at 1565).

22    [26] For both the UMG and Veoh witnesses residing in the Central District, litigation in the Central District will plainly be more convenient. Whether it is *possible* for these witnesses to

23    participate in litigation in the Southern District is not dispositive. *Saleh*, 361 F. Supp. 2d at 1162-63 (transferring case).

24    [27] In Veoh's recent press releases, including the press release it issued concerning its

25    preemptive declaratory judgment action, Veoh states that "the company's principal offices are in Los Angeles and San Diego, California." *See* "Veoh Takes Action To Protect Rights of Copyright

26    Complaint [sic] Companies Offering Innovative Online Content Solutions" (8/9/07), *available at* http://www.veoh.com/corporate/aboutUs.html.   In an apparent effort to deemphasize Veoh's

27    connection to Los Angeles, Veoh's Complaint makes no mention of Veoh's principal office in Los Angeles and it states that Veoh's principal place of business is San Diego. Veoh Complaint ¶ 10.

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 21 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  Manager of Copyright Compliance, the Veoh executive who is specifically responsible for

2  handling copyright infringement notices is apparently based in Los Angeles. Glatstein Decl. Ex.

3  HH (Ms. Simons). Based on testimony Veoh has given in another case, UMG also believes that

4  Veoh operates computer servers in the Central District that are used to make unauthorized

5  "transcoded" copies of infringing videos uploaded to Veoh. *See* Glatstein Declaration, Ex. P.

6  UMG anticipates that evidence relating to these servers will be an important source of evidence

7  concerning Veoh's infringement.   17 U.S.C. § 106(1) (right to reproduce); § 106(2) (right to

8  prepare derivative works); Glatstein Decl. Ex. K (UMG Complaint) at ¶¶ 19-21.

9         What makes the Central District more than just "convenient" for Veoh is the fact that Veoh

10  itself has chosen to make the Central District the forum for litigation of disputes concerning

11  Veoh's services and where it handles infringement claims and takes service of lawsuits. As

12  already noted, Veoh requires as a condition of using its services that its users agree to submit to

13  the *exclusive* jurisdiction of courts in Los Angeles to resolve any issues about its TOU and the

14  Veoh services. Glatstein Decl. Ex. M (Veoh Terms of Use). According to Veoh, its TOU will be

15  a key element in Veoh's defense, and Veoh's services will obviously be the focal point a copyright

16  infringement suit. In addition, Veoh directs the public to send notices concerning copyright

17  infringement to its location in Los Angeles, where Veoh's Senior Manager of Copyright

18  Compliance is based. *See* Glatstein Decl. Ex. N (Veoh Copyright Policy) (requiring that DMCA

19  notices be sent to Ms. Stacie Simmons in Los Angeles, CA, Veoh's Senior Manager for Copyright

20  Compliance). The infringement notices sent to Veoh, Veoh's policies and practices relating to

21  such notices and how they are infringement claims are handled by Veoh, are highly relevant to

22  Veoh's claimed defense under the DMCA. For example, in order for an entity to be eligible for

23  the DMCA safe harbors, it must "respond[] expeditiously to remove, or disable access to, the

24  material that is claimed to be infringing [by a DMCA notice]." 17 U.S.C. ¶ 512(c)(1)(C).

25  Additionally, the DMCA safe harbors only apply to a "service provider" which "adopt[s] and

26  reasonably implement[s]" a policy for the termination of "repeat infringers." 17 U.S.C. § 512(i).

27  According to testimony Veoh has given in a pending infringement action, the witnesses and

28  documents relating to Veoh's DMCA defense are located in the Central District. Glatstein Decl.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 22 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1   Ex. P (Dunning Depo.).  In addition, Veoh's agent for service of process is located in the Central

2   District, meaning that Veoh itself anticipates and expects to respond to suit in the Central District.

3   Glatstein Decl. Ex. O (California Secretary of State filing).  The Central District, in sum, is not

4   just "convenient" for Veoh, in the sense that it is one of the principal locations in which its

5   witnesses and records are locates, it the forum Veoh has chosen to make singularly important for

6   copyright claims and litigation.

7         The Central District is also the more convenient forum for litigation because transfer

8   would enable discovery coordination between this action, and UMG's cases against MySpace,

9   Grouper, and Bolt.  The same reasoning that prompted Judge Matz to order discovery coordination

10  as among Grouper, MySpace and Bolt suits would apply to the Veoh action as well.  There are

11  likely many witnesses in common as between the pending Central District litigations and the Veoh

12  suit, including third party witnesses, and coordination reduces the risks that witnesses will be

13  subject to multiple depositions.  Among others, the following third parties are implicated by

14  discovery in the pending Central District cases, and it seems will likely discovery from them will

15  be relevant too in litigation between UMG and Veoh:

16        • Providers of Advertising Services.  The defendants' financial interest in the

17          infringement is a common element in the cases.  *See, e.g.* 17 U.S.C. § 512(c)(1)(B)

18          (safe harbor not available if there is "financial benefit directly attributable to the

19          infringing activity").Third party Google sells advertising to many "video sharing"

20          websites shown in connection with infringing content, and Google's agreements

21          have been a subject of discovery in the Central District and motion practice.

22          Google also provides advertising services to Veoh and it is therefore likely that it

23          will be a subject to discovery in UMG's action against Veoh.

24        • UMG Licensees.  All the defendants have sought discovery of UMG's licenses on

25          the purported basis they are relevant to damages. In addition to defendants

26          document requests to UMG seeking those licenses, Grouper has served eight

27          document subpoenas on third parties it believes have license agreements with

28          UMG, including Apple, America On-Line, YouTube, and Best Buy, among others.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 23 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1    *See* Glatstein Decl. Exs. V through CC (Grouper document subpoenas). Veoh is

2    likely to seek discovery relating to UMG's agreements too.

3    • <u>Filtering Companies.</u> Veoh contends that it is implementing "state of the art

4    technologies that include filtering," In light of this allegation, Veoh's

5    communications and dealings with third party filtering companies will be a subject

6    of discovery in UMG's claim against Veoh. Defendants dealings with third parties

7    that provide filtering solutions have been the subject of discovery in the Central

8    District actions. *See* Glatstein Decl. Exs. DD through GG (UMG subpoenas).

9    Third parties who may have relevant evidence in all of the related cases, including but not

10   limited to providers of advertising (*e.g.*, Google), UMG licensees (*e.g.*, YouTube), and filtering

11   companies (*e.g.*, Audible Magic), will all be unnecessarily inconvenienced by parallel,

12   uncoordinated litigation in two separate courts, before two separate judges. The coordination of

13   discovery that can be facilitated by transfer will reduce the likely burdens on third parties, thereby

14   serving the interests of justice.

15   Litigation in the Central District would also, of course, be more convenient for UMG's

16   witnesses as well, UMG's records and witnesses are located in the Central District, which is why

17   UMG has pursued the related actions there. As is evident, for example, from the witnesses UMG

18   identified in its Rule 26 disclosures in the Grouper, Bolt, and MySpace actions, not only are there

19   *many* witnesses located in the Central District, but their testimony is highly relevant to the parties'

20   claims and defenses. *See* Glatstein Decl. Ex. II (MySpace Rule 26 disclosures). *Saleh v. Titan*

21   *Corp.*, 361 F. Supp. 2d 1152, 1161 (S.D. Cal. 2005) (court should evaluate the number of

22   witnesses and the importance of their testimony).

23   In addition to witness overlap, the Veoh action will likely involve substantial and

24   sometimes *identical* discovery and legal issues with the pending Central District cases as is readily

25   evident by a comparison of the pleadings. *Compare* UMG's Complaint against Veoh (Glatstein

26   Decl. Ex. K) *with* UMG's Complaints Against Grouper, Bolt and MySpace (*Id.* Exs. A, D and G);

27   and *compare* Veoh's Complaint *with* Answers of Grouper, Bolt and MySpace (*Id.* Exs. B, E, and

28   H). Transfer and coordination makes it more likely those discovery and legal issues will only

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112

- 24 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW

1  need to be resolved one time by one judicial officer. This benefits overall judicial efficiency (as
2  noted above), but also benefits the parties and third-parties, who must only bring their issues to the
3  court one time for a single determination.

4       In sum, it is fair to say the Central District is overwhelmingly the most logical and
5  convenient forum for the parties, third parties, and taking into account judicial economy and the
6  interests of justice. Veoh's perceived tactical advantage in initiation litigation in the Southern
7  District, thereby avoiding Veoh's own exclusive forum of choice, is entitled to no weight.
8  Accordingly in the event the Court chooses not dismiss Veoh's action, it should be transferred to
9  the Central District.

10  **VI.    CONCLUSION**

11       For the foregoing reasons, the Court should grant UMG's motion to dismiss or, in the
12  alternative to transfer this action to the Central District of California.

13  Dated: September 4, 2007                    Respectfully Submitted,

14                                              IRELL & MANELLA LLP
15

16

17                                              By:
18                                                   Steven A. Marenberg
                                                     Elliot Brown
19                                                   Benjamin Glatstein

20                                              Attorneys for Declaratory Defendants
21                                              UMG RECORDINGS, INC.; UNIVERSAL
                                                MUSIC CORP.; SONGS OF UNIVERSAL,
22                                              INC.; UNIVERSAL-POLYGRAM
                                                INTERNATIONAL PUBLISHING, INC.;
23                                              RONDOR MUSIC INTERNATIONAL, INC.

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1748112                              - 25 -

DEFENDANTS' MOTION TO DISMISS OR TO
TRANSFER
CASE NO. 07 CV 1568 TJW