1   Steven A. Marenberg (101033) (smarenberg@irell.com)
2   Elliot Brown (150802) (ebrown@irell.com)
   Brian Ledahl (186579) (bledahl@irell.com)
3   Benjamin Glatstein (242034) (bglatstein@irell.com)
   IRELL & MANELLA LLP
4   1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
5   Telephone: (310) 277-1010
   Facsimile: (310) 203-7199

6
   Attorneys for Plaintiffs
7   UMG Recordings, Inc., Universal Music Corp.
   Songs of Universal, Inc., Universal-Polygram
8   International Publishing, Inc. and Rondor Music
   International, Inc.

9

10   Harvey Saferstein (SBN 49750) (hasaferstein@mintz.com)
   Nada Shamonki (SBN 205359) (nshamonki@mintz.com)
11   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
   1620 26th Street, Suite 150 South
12   Santa Monica, CA 90404
   Telephone: (310) 586-3200
13   Facsimile: (310) 586-3202

14   Attorneys for Defendant
   Bolt, Inc., d/b/a Bolt.com

15

16            **UNITED STATES DISTRICT COURT**

17            **CENTRAL DISTRICT OF CALIFORNIA**

18               **WESTERN DIVISION**

19

| | |
|---|---|
| 20   UMG RECORDINGS, INC., *et al.*, | Case No. CV06-6577 AHM (AJWx) |
| 21       Plaintiffs, | **JOINT RULE 26(f) REPORT** |
| 22       v. | |
| 23   BOLT, INC., d/b/a BOLT.COM, a | Judge: Hon. A. Howard Matz |
|    Delaware corporation; and DOES 1-10, | Rule 26(f) Conf. Date: August 13, 2007 |
| 24   inclusive, | Ctrm: 14 |
| | Time: 1:30 p.m. |
| 25 | |
| 26       Defendants. | |

27

28

1    Pursuant to Federal Rule of Civil Procedure 26(f), Central District of
2  California Local Rule 26-1, and this Court's January 5, 2007 Order, counsel for all
3  parties met and conferred on June 29, 2007, and hereby submit this Joint Report.
4  **a)    SHORT SYNOPSIS OF PARTIES' MAIN CLAIMS AND DEFENSES**
5      **UMG's Statement:**
6      This is an action for direct, contributory and vicarious copyright infringement
7  and for inducement of copyright infringement brought by plaintiffs UMG
8  Recordings, Inc., *et al.* ("UMG") against defendant Bolt, Inc. ("Bolt" or
9  "Defendant").  UMG's claims arise out of Defendant's unauthorized exploitation of
10  UMG's copyrighted materials on the website Bolt.com—one of the most visited so-
11  called "user-generated content" websites on the Internet.  Notwithstanding its
12  moniker, much of the content that Bolt.com provides to its users for streaming and
13  downloading is not user-generated at all, but is in fact the stolen intellectual property
14  of UMG and others.  At the time this lawsuit was filed, Defendant knew that
15  hundreds of UMG's copyrighted works were readily available for display, copying,
16  and distribution, and, although it could have, Defendant did *nothing* about it.
17  Indeed, by offering its users free access to UMG's copyrighted works, Bolt.com has
18  become one of the most visited websites on the Internet.  Neither Defendants, nor
19  the hundreds of thousands of Bolt.com users have obtained the rights to use and
20  exploit UMG's copyrighted works, and neither UMG nor its artists have received
21  any compensation for Defendant's unauthorized use of UMG's works.
22      Defendant engages in direct infringement of UMG's copyrighted works by,
23  inter alia, copying, reformatting, distributing, publicly displaying and performing,
24  and creating derivative works of those works.  Defendant also participates in and
25  contributes to the infringement of Bolt.com's users by inviting and encouraging
26  users all over the world to view and copy UMG's copyrighted works and by
27  facilitating, encouraging, participating in, and inducing its users to engage in the
28  unauthorized reproduction, adaptation, distribution, and public performance of

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

1716976.

1   UMG's copyrighted works.  Defendant's conduct is not excused by any provision of
2   the Copyright Act, including but not limited to the safe harbor provisions of the
3   Digital Millennium Copyright Act ("DMCA").

4   **Bolt's Statement:**

5   　　　This case is governed by the Digital Millennium Copyright Act ("DMCA"),
6   17 U.S.C. § 512.  Contrary to UMG's claims, Bolt is not liable for copyright
7   infringement because it is a service provider that qualifies for the "safe harbor"
8   under § 512(c) of the DMCA.  The DMCA provides a complete defense to
9   copyright liability and was intended to ensure that a service provider is not targeted
10  for the alleged copyright violations of its users - precisely the result UMG seeks
11  here.  In accordance with the requirements of the DMCA, Bolt has responded
12  expeditiously to DMCA notices from UMG as well as others.  Indeed, Bolt has gone
13  well beyond the minimum required by the DMCA; it has strived to cooperate with
14  content owners (including UMG) and has now also implemented filtering
15  technology to prevent users from posting infringing materials to Bolt.com.  The
16  DMCA was intended to ensure the continued use of the internet for exactly the
17  purpose of Bolt - a platform for the exchange of ideas and information.

18  　　　While the safe harbor provides Bolt with a complete defense in this case, it is
19  also true that, even without its protections, there would be no liability.  Bolt is not
20  liable for direct copyright infringement because Bolt.com is a passive website,
21  which does not itself violate any of the rights protected by the Copyright Act.  Bolt
22  is not liable for contributory copyright infringement because it does not knowingly
23  materially contribute to, intentionally induce, or cause infringement of the sound
24  recordings and musical compositions and/or audio-visual works for which UMG
25  seeks relief in this lawsuit.  In fact, the notion that Bolt induces others to infringe the
26  sound recordings and musical compositions and/or audio-visual works for which
27  UMG seeks relief in this lawsuit is wholly baseless as Bolt is committed to content
28  protection on the internet.  Nor does Bolt have either the right or ability to control

UMG RECORDINGS, INC. et al v. BOLT, INC. et al, JOINT 26(f) REPORT
1716976.

1  content posted by its members or directly financially benefit from any infringement
2  of the sound recordings and musical compositions and/or audio-visual works for
3  which UMG seeks relief in this lawsuit, and thus Bolt is not liable for vicarious
4  infringement.  Lastly, UMG lacks standing to assert claims for many if not all of the
5  sound recordings and musical compositions and/or audio-visual works for which it
6  seeks relief in this lawsuit.

7       Like other legitimate service providers, Bolt cannot prevent third parties from
8  attempting to misuse its service by uploading unlicensed material (in violation of
9  Bolt's Terms of Service).  Congress, recognizing this situation, enacted the DMCA
10  in 1998 to shield service providers such as Bolt from lawsuits of copyright
11  infringement while also affording a remedy to copyright owners so that their works
12  would not remain online where they could be freely copied and distributed.  The
13  DMCA places the responsibility on copyright owners, not service providers, to
14  search for and identify infringing material, and provide service providers with
15  notifications that substantially comply with the DMCA's requirements.

16       By this lawsuit, UMG attempts to shift to Bolt its legal obligation under the
17  DMCA to monitor and report third party acts of infringement.  Bolt remains ready,
18  willing and able to take down any copyrighted material from its Website, and to
19  provide other tools to rights owners to assist them in their efforts to monitor the site
20  for any infringing content.  However, that is not what UMG wants in this case.
21  UMG seeks to turn the DMCA and a well developed body of case law construing
22  that statute on its head by imposing on service providers (such as Bolt) the
23  obligations that Congress plainly placed on content owners (such as UMG).

24  **b)**     **BRIEF DESCRIPTION OF KEY LEGAL ISSUES**

25       <u>**UMG's Description of the Principal Legal Issues:**</u>

26       1.     Whether Bolt has directly infringed UMG's copyrights by copying,
27  reformatting, distributing, publicly displaying, publicly performing, and/or creating
28  derivative works of UMG's copyrighted works in connection with Bolt.com.

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

1      2.      Whether Bolt has indirectly infringed UMG's copyrights by facilitating,

2   encouraging, participating in, and/or inducing its users to engage in the unauthorized

3   reproduction, adaptation, distribution, public display and/or public performance of

4   UMG's copyrighted works in connection with Bolt.com.

5      3.      Whether Bolt is entitled to the "safe harbor" under the Digital

6   Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

7      4.      UMG's damages.

8   **Bolt's Description of the Principal Legal Issues**:

9      1.      Whether Bolt is entitled to the protection of the "safe harbor" under the

10  Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

11     2.      Whether UMG has any provable damages in this case.

12     3.      Whether UMG has misused its copyrights such that they should not be

13  enforced in this case.

14     4.      Whether UMG in fact has good title to the works at issue in this case.

15     5.      Whether UMG can satisfy its burden to prove infringement, even in the

16  absence of DMCA protection.

17     6.      Whether Bolt's affirmative defenses bar recovery.

18  c)    **REALISTIC RANGE OF PROVABLE DAMAGES**

19       **UMG's Statement:**

20       It is not possible at this time to provide an accurate estimate of damages.

21  Bolt's infringing activities are ongoing and many of the salient facts relating to

22  damages—such as how many of UMG's copyrighted works have been infringed by

23  Bolt and Bolt's revenue records—are unknown to UMG at this time.

24       Nevertheless, given the vast commercial value of UMG's copyrighted works

25  and the willful nature of Bolt's infringement, UMG would be entitled to the statutory

26  maximum of $150,000 per infringed work under the Copyright Act.

27       In addition, UMG is entitled to statutory damages for each instance of

28  contributory infringement or inducement of infringement.  It is not possible to say in

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

**EXHIBIT F Page 98**

1716976.                            - 5 -

1 advance of discovery how extensive Bolt's acts of contributory infringement and
2 inducement might be.

3     **Bolt's Statement:**

4     UMG is not entitled to damages because Bolt cannot be held liable for
5 damages based on its compliance with the DMCA. Indeed, even if UMG were to
6 prevail on its claims (which Bolt believes it will not), UMG has intentionally
7 benefited from Bolt, not been damaged by it, and any award of statutory damages
8 here would be inappropriate. Even if Bolt is found ineligible for the DMCA safe
9 harbor and UMG somehow proves its claims for copyright infringement, UMG will
10 still not be entitled to the statutory maximum of $150,000 per infringed work under
11 the Copyright Act as there is no basis for finding that Bolt is a "willful" infringer.
12 To the extent that UMG is able to prove its entitlement to statutory damages, under
13 17 U.S.C. § 504(c)(2), remittitur of statutory damages to $200 per infringed work is
14 warranted here. UMG's damages will be further limited by 17 U.S.C. § 412, which
15 provides that UMG is not entitled to statutory damages for any infringement of
16 copyright commenced before the effective date of its registration.

17 **d)  INSURANCE COVERAGE**

18     Bolt does not have an insurance policy that potentially provides coverage.

19 **e)  LIKELIHOOD OF MOTIONS**

20     **UMG's Statement:**

21     The parties do not presently anticipate the need to add further claims or
22 parties. UMG does not anticipate further amending its pleadings. Neither party
23 intends to seek a transfer of venue. UMG intends to seek summary judgment or
24 summary adjudication on many, if not all, of the liability issues in this case and the
25 affirmative defenses raised by Bolt.

26     **Bolt's Statement:**

27     Bolt does not anticipate filing a motion to dismiss Plaintiff's Complaint, but
28 reserves all rights with respect to any amended pleading.

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

1  Bolt plans to move for summary judgment on several, if not all, of the
2  liability issues in this case, including, without limitation, whether Bolt qualifies for
3  the "safe harbor" under the DMCA.

4  Bolt also anticipates filing a motion to shift the cost of UMG's unreasonable
5  preservation and production demands.

6  **f)    DISCOVERY AND EXPERTS**

7  Pursuant to Rule 26(f) the parties agree as follows:

8  1.    Preservation of Discoverable Information – New Rule 26(f)

9  The parties have discussed and acknowledged their respective obligations to
10  preserve evidence and have discussed the benefits and burdens of electronic
11  evidence preservation. Both parties have indicated to each other the steps they are
12  taking to preserve evidence and the information that is being preserved.

13  2.    Rule 26(f)(1) – Initial Disclosures

14  The parties have agreed to make initial disclosures of individuals and
15  categories of documents under Rule 26(a)(1) by Jul 27, 2007. The parties do not
16  propose any other changes to the requirements of Rule 26(a)(1).

17  3.    Rule 26(f)(2) – Subjects of Discovery

18  **UMG's Position:**

19  Without limitation, UMG anticipates that discovery will be needed on
20  subjects related to: the functionality of the Bolt.com website, including the extent to
21  which Bolt modifies the content uploaded onto its system; whether and how Bolt
22  obtains the rights to exploit the works that users upload onto its website; which of
23  UMG's copyrighted works have been exploited by Bolt and its users without
24  authorization; the extent of Bolt's knowledge of the infringing activities that take
25  place on its website; the extent of Bolt's participation in the infringing activities that
26  take place on its website; the extent to which Bolt has invited or encouraged the
27  infringing activities that occur on Bolt.com; the extent to which Bolt benefits from
28  the infringing activities that occur on Bolt.com; UMG's damages and Bolt's profits.

1    **Bolt's Position:**

2    Without limitation, Bolt anticipates discovery will be needed on subjects

3    related to:  UMG's registration, licensing, and chain of title to the sound recording

4    and musical compositions and/or audio-visual works at issue; the identity of the

5    sound recording and musical compositions and/or audio-visual works at issue;

6    whether UMG sent Bolt DMCA notices for the sound recordings and musical

7    compositions and/or audio-visual works at issue, and the adequacy of any such

8    notices; UMG's knowledge of potentially unauthorized content on Bolt and its

9    failure to take steps to protect its copyrights; UMG's records of Bolt's response to

10   any DMCA notices or other requests; UMG's basis for claiming damages; and

11   generally the basis for UMG's allegations as to Bolt's liability as set forth in the

12   Complaint.  Bolt also intends to take discovery relating to UMG's monitoring of

13   Bolt's website, UMG's failure to comply with the DMCA, UMG's and its affiliates

14   viral marketing activities, the viral marketing activities of others in the industry, and

15   the reasons why UMG has decided not to provide compliant DMCA notifications,

16   including its business decisions relating to legitimate service providers such as Bolt.

17   **4.    Rule 26(f)(2) – Discovery Phases and Deadlines**

18   **Discovery Conducted to Date**

19   On July 2, 2007, UMG served Bolt with UMG's first sets of interrogatories

20   and document requests.

21   **UMG's Discovery Proposal:**

22   UMG proposes that discovery in this case parallel the schedule adopted by the

23   Court in *UMG Recordings, Inc. v. Grouper Networks, Inc.*, C.D. Case No. CV06-

24   6561 AHM (AJWx), and *UMG Recordings, Inc. v. MySpace, Inc.*, C.D. Case No.

25   Case No. CV 06-07361 AHM (AJWx), both of which raise identical or similar

26   issues of fact and law.  Specifically, UMG proposes a non-expert discovery cut-off

27   date of March 17, 2008.  For expert discovery, UMG proposes that opening expert

28

1  witness discovery be made by December 10, 2007, and that expert discovery

2  conclude by April 21, 2008.

3       UMG further proposes that discovery be coordinated among the defendants in

4  this case and in the two related cases, *UMG Recordings, Inc. v. Grouper* and *UMG*

5  *Recordings, Inc. v. MySpace*.  Under UMG's proposal, the defendants in the three

6  cases would coordinate their efforts in serving written discovery on UMG and

7  would coordinate in taking the depositions of UMG's witnesses.  The discovery that

8  the defendants in this case and in each of the related cases will take of UMG will be

9  the same or substantially overlapping—for example, discovery relating to the

10 registration, licensing, and chain of title of UMG's copyrighted works, discovery

11 relating to UMG's enforcement of its copyrights, discovery relating to UMG's

12 corporate structure, and discovery relating to UMG's damages.  The consolidation of

13 the defendants' discovery efforts in these cases would avoid a tremendous waste of

14 resources for the parties and—insofar as duplicative discovery may entangle the

15 Court in the adjudication of duplicative discovery motions—for the Court as well.

16 Indeed, the Court has previously ordered coordination of discovery in the *Grouper*

17 and *MySpace* cases; for the sake of consistency, Bolt should be similarly bound to

18 the Court's coordination Order.

19      **Bolt's Discovery Proposal:**

20      Bolt agrees to the dates and coordination of cases as set forth above.

21      5.    **Rule 26(f)(3) – Discovery of Electronically Stored Information**

22      The parties have acknowledged and discussed their obligations regarding the

23 production of electronically stored information.  The form in which this information

24 will be produced is a matter of ongoing discussion between the parties.

25      6.    **Rule 26(f)(4) – Issues Relating to Claims of Privilege or Trial**

26 **Preparation Material**

27      The parties have agreed to a claw-back procedure (to be incorporated in the

28 protective order discussed below) whereby the assertion of a privilege may be made

1  after production.  Previously-produced privileged documents will be promptly

2  returned to the parties upon assertion of a privilege.

3          7.      **Rule 26(f)(5) – Limitations on Discovery**

4          The parties do not propose any changes to the limitations on discovery under

5  the Federal or Local Rules at this time.  However, the parties may ask the Court to

6  increase the permissible number of depositions and/or the permissible number of

7  interrogatories should the need for further discovery arise.  In addition, UMG takes

8  the position that 30(b)(6) depositions should not count against the maximum set by

9  Rule 33.

10         At this time, UMG anticipates that it will conduct a minimum of ten

11  depositions in this case.  A more accurate estimate of the number of depositions that

12  UMG will need to take will be possible after UMG conducts its initial 30(b)(6)

13  depositions.

14         At this time, Bolt anticipates it will conduct a minimum of ten depositions in

15  this case.  Bolt will more accurately be able to estimate the number of depositions it

16  will need after it conducts its initial depositions pursuant to Rule 30(b)(6).  Bolt

17  disagrees with UMG's proposal that Rule 30(b)(6) depositions should not count

18  against the maximum number set by Rule 33.

19         8.      **Rule 26(f)(6) – Other Orders**

20         The parties acknowledge that discovery in this matter may include proprietary

21  information and private financial information.  As a result, the parties agree that

22  UMG will produce and supply to Bolt the protective order governing the production

23  and use of confidential materials in both the *Grouper* and *MySpace* cases.  The

24  protective order includes a claw-back provision, as described above.  Once an

25  amendment to the protective order has been approved by both parties, the parties

26  will ask the Court to enter the amended protective order.

27

28

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

9.     **Expert Disclosures – Rule 26(a)(2)**

**UMG's Expert Disclosure and Discovery Proposal:**

Consistent with its desire to match the pace of this case to the related *Grouper* and *MySpace* cases, UMG proposes that opening expert witness disclosure relating to liability follow this Court's discovery order in *Grouper* and *MySpace*. Therefore, such disclosures would be made on December 10, 2007, with rebuttal disclosures due at a mutually agreeable time thereafter. Again, as ordered by this Court in the *Grouper* and *MySpace* cases, discovery of liability experts would conclude by April 21, 2008.

UMG further proposes, with respect to any other non-liability experts, pursuant to Local Rule 26-1(f) and Fed. R. Civ. P. 26(a)(2), expert disclosures shall be made 90 days before the trial date; any rebuttal disclosures shall be made within 30 days thereafter.

**Bolt's Expert Disclosure and Discovery Proposal:**

Bolt agrees to the dates and scheduling as set forth above.

**g)     SUMMARY JUDGMENT/MOTIONS *IN LIMINE***

As noted above, pursuant to Local Rule 26-1(b), both parties anticipate that they will file dispositive motions. At this time, the parties anticipate that cross-motions for summary judgment may be filed on various issues relating to Bolt's defenses of fair use and whether Bolt is shielded from liability the safe harbor provisions of the DMCA. In addition, if discovery reveals that other factual issues relating to infringement are largely undisputed, the parties may file motions or cross-motions for summary judgment on UMG's infringement claims or on some subset thereof.

Consistent with the Court's comments in the Rule 26(f) Conference in the *Grouper* case, UMG proposes that the Court defer setting either a motion cut-off date or a motion in limine cut-off date at this time. Rather, UMG proposes that the

1716976.

1  Court set these deadlines once the trial date in this case, *Grouper*, and *MySpace*
2  have been coordinated and set.

3      Bolt agrees that the Court should defer setting cut-off dates and that the Court
4  should establish such dates after it sets the trial date in this case.

5  **h)    SETTLEMENT**

6      Since the filing of this suit, the parties engaged in extensive settlement
7  discussions and executed a settlement agreement.  Bolt failed to make the payment
8  to UMG required by the settlement agreement; accordingly, the settlement was
9  rendered null and void.  Pursuant to Local Rule 26-1(c) and 16-15.4, the parties
10  agree to participate in a non-judicial dispute resolution proceeding, Settlement
11  Procedure No. 3.

12  **i)    ESTIMATE OF TIME REQUIRED FOR TRIAL**

13      Pursuant to Local Rule 26-1(d), the parties estimate that approximately 15
14  trial days will be required to try this case.  Trial will be by jury.  In the absence of
15  discovery, neither party knows how many witnesses it will call at trial.  UMG
16  proposes that the selection of a trial date be deferred so that it can be coordinated
17  with trial dates in the related *Grouper* and *MySpace* cases.  Bolt agrees that the trial
18  date in this case should be coordinated with any trial date in the *Grouper* and
19  *MySpace* cases.

20  **j)    PRESUMPTIVE SCHEDULE OF PRETRIAL DATES**

21      Pursuant to the Court's January 5, 2007 Order, the parties have completed the
22  scheduling form attached as Exhibit A to the Court's Order and have attached the
23  completed form as Exhibit A hereto.

24  **k)    OTHER ISSUES AFFECTING CASE STATUS OR MANAGEMENT**

25      Pursuant to Local Rule 26-1(a), the parties agree that this case is not a
26  complex case and that the Manual for Complex Litigation should not be used in this
27  case.  The parties are not aware at this time of any other issues affecting the status or
28  management of the case.

l)    **CONFLICT INFORMATION**

For conflict purposes, each of the plaintiffs in this action identifies Vivendi, S.A., which is a publicly traded French company on the Paris Stock Exchange, as its ultimate parent. The plaintiffs have scores of subsidiaries and affiliates, all of which are ultimately owned by Vivendi, S.A.

Not applicable for Bolt.

m)    **PATENT CASES**

This case is not a patent case.

n)    **MAGISTRATE JUDGE**

The parties do not wish to have a Magistrate Judge preside at trial.

Dated:  July 27, 2007                    IRELL & MANELLA LLP

By: _____
        Steven A. Marenberg

        Attorneys for Plaintiffs
        UMG RECORDINGS, INC.;
        UNIVERSAL MUSIC CORP.;
        SONGS OF UNIVERSAL, INC.;
        UNIVERSAL-POLYGRAM
        INTERNATIONAL PUBLISHING,
        INC.; RONDOR MUSIC
        INTERNATIONAL, INC.

Dated:  July 27, 2007                    MINTZ LEVIN COHN FERRIS
                                         GLOVSKY AND POPEO P.C.

By: _____
        Nada I. Shamonki

        Attorneys for Defendant
        BOLT, INC.

UMG RECORDINGS, INC. et al v. BOLT, INC. et al,
JOINT 26(f) REPORT

1716976.

**EXHIBIT F Page 106**

**EXHIBIT  A**

### JUDGE A HOWARD MATZ
### PRESUMPTIVE SCHEDULE OF PRETRIAL DATES

| Matter | Time | Weeks before trial | Plaintiff's Request | Defendant's Request | Court Order |
|---|---|---|---|---|---|
| Trial date (jury) (court) Estimated length: ____15____ days | 8:00 a.m. | | TBD | TBD | |
| [Court trial:] File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | | - 1 | TBD | TBD | |
| Final Pretrial Conference; Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed *Voir Dire* Qs and Agreed-to Statement of Case | 11:00 a.m. | - 2 | TBD | TBD | |
| Lodge Pretrial Conf. Order File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | | - 4 | TBD | TBD | |
| Last day for hand-serving Motions in Limine | | - 6 | TBD | TBD | |
| Last Day to Meet Before Final Pretrial Conference (L.R. 16-2) | | 8 | TBD | TBD | |
| Last day for hearing motions | 10:00 a.m. | 8 | TBD | TBD | |
| Last day for hand-serving motions and filing (other than Motions in Limine) | | 12 | TBD | TBD | |
| Non-expert Discovery cut-off | | - 14 | 3/17/2008 | 3/17/08 | |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

L.R. 16-14 Settlement Choice:    (1) CT/USMJ    (2) Atty    (3) Outside ADR

| | | Weeks | Plaintiff | Defendant | Court |
|---|---|---|---|---|---|
| Expert discovery cut-off | | - 6 | 4/21/2008 | 4/21/08 | |
| Rebuttal Expert Witness Disclosure | | - 9 | TBD | TBD | |
| Opening Expert Witness Disclosure [See F.R.Civ.P. 26(a)(2)] | | - 13 | 12/10/2007 | 12/10/07 | |
| Last day to conduct Settlement Conference | | | | | |
| Last Day to Amend Pleadings or Add Parties | | | | | |

# EXHIBIT A

S:Forms&Orders\CourtClerk\presumptive schedule new.wpd

**EXHIBIT F Page 108**

Ex A p. 14

1

## **PROOF OF SERVICE**

2

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900, Los Angeles, California 90067-4276.

3

4

    On July 27, 2007, I served the foregoing document described as **JOINT RULE 26(f) REPORT** on each interested party, as follows:

5

6
                  Harvey I. Saferstein, Esq.
                  MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

7
                  Water Garden Phase 1
                  1620 26th Street, Suite 150 South
                  Santa Monica, CA  90404

8

9
                  Facsimile No.: 310-586-3202
                  E-mail: hsaferstein@mintz.com

10

11

[X]      (BY MAIL)  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party, as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Irell & Manella LLP, Los Angeles, California.  I am readily familiar with Irell & Manella LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

12

13

14

15

[X]      (BY EMAIL)  I caused the foregoing document to be served by electronic mail transmission to each interested party at the electronic mail address shown above.

16

17

Executed on July 27, 2007, at Los Angeles, California.

18

I declare under penalty of perjury that the foregoing is true and correct.

19

20

      Patricia W. Lewis
        (Type or print name)                     (Signature)

21

22

23

24

25

26

27

28

**EXHIBIT F Page 109**

1728668